# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|                                      |   |                       |
|--------------------------------------|---|-----------------------|
| **BARRY S. SHLIAN,**                 | * |                       |
| Plaintiff,                           | * |                       |
| v.                                   | * | Case No. BPG-13-954   |
| **SHOPPERS FOOD WAREHOUSE CORP.,**   | * |                       |
| Defendant.                           | * |                       |

## MEMORANDUM OPINION

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4. (ECF No. 12.) Currently pending are defendant's Motion for Summary Judgment ("Summary Judgment Motion") (ECF No. 19), plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Summary Judgment Opposition") (ECF No. 20), and defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Summary Judgment Reply") (ECF No. 23). Also currently pending are plaintiff's Motion for Spoliation Sanction ("Sanction Motion") (ECF No. 21) and defendant's Opposition to Plaintiff's Motion for Spoliation Sanction ("Sanction Opposition") (ECF No. 22). No hearing is deemed necessary. Loc. R. 105.6. For the reasons discussed herein, defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED and plaintiff's Motion for Spoliation Sanction (ECF No. 21) is DENIED.

I. **Background**

Plaintiff Barry S. Shlian ("plaintiff") allegedly sustained personal injuries on June 17, 2012 while shopping at a store owned and operated by defendant Shoppers Food Warehouse

Corporation ("defendant," or "Shoppers") in Baltimore, Maryland. (Compl., ECF No. 2 at ¶¶ 1, 4.) According to plaintiff's account of the incident, plaintiff entered Shoppers Food Warehouse between 7:00 and 7:30 a.m. on Sunday, June 17, 2012. (Pl.'s Depo., ECF No. 19-2 at 17:11; 18:11-14.) After selecting a few items to purchase, plaintiff turned a corner to enter a cashier lane, slipped, and fell. (Id. at 22:16-23:1.) After falling, plaintiff saw a puddle of water on the floor and felt his shorts were wet. (Id. at 30:4-19.) Cashier Bernice Lebowitz told him that a customer in front of him purchased several bags of ice and the bags must have dripped on the floor. (Id. at 31:6-7; 32:2-6.) Plaintiff took a few moments to get up and then spoke with Assistant Store Director Michael Palmer. (Id. at 29:8-22.) Mr. Palmer asked plaintiff if he needed medical care, which plaintiff declined, and Mr. Palmer asked plaintiff for his personal information for an incident report. (Id. at 33:1-6.) Mr. Palmer gave plaintiff a piece of paper containing Mr. Palmer's name and telephone number. (Pl.'s Affid., ECF No. 20-2 at ¶ 7; Ex. 3 of Summ. J. Opp., ECF No. 20-4.) Plaintiff drove himself home and spoke with his wife, Brenda Shlian, and with his neighbor, emergency medicine physician Matt Levy. (Pl.'s Depo., ECF No. 19-2 at 34:5-18; 36:4-16.) Plaintiff then called an ambulance based on Dr. Levy's suggestion. (Pl.'s Affid., ECF No. 20-2 at ¶ 8.) Plaintiff was transported to St. Joseph Medical Center and admitted from June 17 to June 20, 2012. (Id.; Brenda Shlian Affid., ECF No. 20-3 at ¶ 5.)

Following the incident, Mr. Palmer documented the event on a Customer/Vendor Incident Worksheet. (Ex. 4, ECF No. 20-5.) Mr. Palmer wrote that "[c]ustomer slipped on melted ice from customer in front of him" and identified the puddle as measuring twelve inches by twelve inches and being present for thirty seconds. (Id.) Mr. Palmer also stated that the store had a functional CCTV system that recorded the incident. (Id.)

On March 21, 2013, plaintiff filed suit against defendant in the Circuit Court of Maryland for Baltimore City. (Petition for Removal, ECF No. 1 at ¶ 1.) Plaintiff states a negligence claim, asserting that defendant breached its duty of care to him by "failing to either clean up the water on the floor, or to properly and sufficiently warn the Plaintiff, Barry S. Shlian, of the existence of the liquid on the floor." (ECF No. 2 at ¶ 5.) Plaintiff seeks damages in the amount of $300,000.00. (ECF No. 2 at 2.)

On March 27, 2013, defendant filed a Petition for Removal to this court on the grounds of diversity of citizenship pursuant to 28 U.S.C. § 1441(a).[1] (ECF No. 1.) Discovery closed on October 15, 2013. (Scheduling Order, ECF No. 15.) Thereafter, the pending motions and related pleadings were filed.

## II. Defendant's Summary Judgment Motion

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16

---

[1] Defendant's Petition for Removal was entered by the Clerk on March 29, 2013. (ECF No. 1.)

(4th Cir. 1993). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. Anderson, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party. Anderson, 477 U.S. at 252.

### B. Negligence Standard

Defendant moves for summary judgment, arguing that plaintiff cannot establish a prima facie case of negligence because plaintiff failed to offer evidence that defendant had actual or constructive knowledge of the alleged hazard and an adverse inference alone is insufficient to satisfy plaintiff's burden of proof. (ECF No. 19-1 at 6; ECF No. 23 at 2-3.) In reliance upon the customer/vendor incident worksheet prepared by Mr. Palmer, (ECF No. 20-5), plaintiff argues there is evidence that the puddle was present for thirty seconds, which plaintiff maintains is a

sufficient amount of time for defendant to be aware of the hazard and warn plaintiff, and that the unpreserved tape of the incident would have demonstrated this timeframe. (ECF No. 20-1 at 5-7.) Under Maryland law,[2] as a customer in a store maintained by defendant, plaintiff was a business invitee to whom defendant owed a duty to "use reasonable and ordinary care to keep the premises safe … and to protect [him] from injury caused by an unreasonable risk that [he], exercising ordinary care for [his] own safety, [would] not discover." Henley v. Prince George's Cnty., 503 A.2d 1333, 1343 (Md. 1986). "[N]o presumption of negligence on the part of the proprietor," however, "arises merely from a showing that an injury was sustained in his store." Garner v. Supervalu, Inc., 396 Fed. App'x 27, 29 (4th Cir. 2010) (internal citation omitted). Maryland courts have emphasized that a store operator is "not an insurer of the safety of his customers," Moulden v. Greenbelt Consumer Servs., Inc., 210 A.2d 724, 725 (Md. 1965), and have held that it would be unreasonable to impose a duty on a proprietor to continuously inspect the premises. See, e.g., Lexington Mkt. Auth. v. Zappala, 197 A.2d 147, 148 (Md. 1964) (commercial business owner did not breach duty of care by failing to instantaneously detect and correct dangerous condition of oil or grease on parking garage floor which allegedly caused customer to fall). Accordingly, "the burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence." Joseph v. Bozzuto Mgmt. Co., 173 Md. App. 305, 315-316 (Md. Ct. Spec. App. 2007) (internal citation omitted).

 1. **There is no evidence that defendant created the hazard or had actual notice of the hazard**

---

[2] Because the undersigned's jurisdiction over this matter is based on diversity of citizenship, the undersigned must apply Maryland law to issues of substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

Defendant argues that plaintiff offers no evidence that defendant created the hazard nor that defendant had any actual knowledge of the hazard prior to plaintiff's fall. (ECF No. 19-1 at 6.) In the absence of evidence that the defendant created the hazardous condition, the plaintiff must prove the defendant's actual or constructive knowledge of a hazardous condition, that is, knowledge of the existence of the liquid on the floor prior to plaintiff's injury. Maans v. Giant of Md., L.L.C., 161 Md. App. 620, 631 (Md. Ct. Spec. App. 2005). Plaintiff alleges that melting ice from a customer ahead of plaintiff in line created the hazard (ECF No. 20-1 at 4), attributing the creation of the hazard to a third party rather than defendant. Additionally, plaintiff directly admits that he does not have any evidence demonstrating defendant had actual notice of the dangerous condition. (ECF No. 20-1 at 6.) Therefore, plaintiff acknowledges a lack of evidence that defendant created the hazard or had actual knowledge of the dangerous condition and plaintiff may only proceed under a theory of constructive notice.

## 2. **There is no evidence that defendant had constructive notice of the hazard**

Plaintiff explicitly acknowledges that he lacks any direct evidence that defendant had constructive notice of the hazard and instead seeks to rely upon an adverse inference arising from defendant's destruction of the CCTV tape. (ECF No. 20-1 at 6.) Under Maryland law, in the absence of evidence that the proprietor had actual notice of the existence of a dangerous condition before an invitee's fall, an invitee must prove that the proprietor had constructive knowledge of the defective condition. Maans, 161 Md. App. at 631. A plaintiff may establish constructive knowledge if the plaintiff shows that the hazardous condition existed for a sufficient period of time for a proprietor to remedy the condition or to warn of it. Id. at 638; see also Deering Woods Condominium Ass'n v. Spoon, 833 A.2d 17, 24 (Md. 2003) ("[I]f it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them,

6

to discover them, had he exercised reasonable care, his failure to discover them may in itself be evidence of negligence sufficient to charge him with knowledge of them") (internal quotation omitted). The Maryland courts refer to this type of evidence as "time on the floor" evidence. Maans, 161 Md. App. at 638. Evidence of "the size or nature of the spill is not a substitute for 'time on the floor' evidence." Saunders v. Wal-Mart Stores, Inc., 2010 WL 1416542, *4 (D. Md. Apr. 5, 2010). Rather, the court looks to the circumstances surrounding the plaintiff's fall. Deering Woods, 833 A.2d at 24. The court considers "the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions." Maans, 161 Md. App. at 629 (internal citation and quotation marks omitted).

Plaintiff has failed to offer evidence that the puddle was present long enough to provide defendant with constructive notice of its presence. Plaintiff himself did not see the puddle before he fell, Cashier Bernice Lebowitz did not have any recollection of the event, and Assistant Store Director Michael Palmer did not witness the fall. (Pl.'s Depo., ECF No. 19-2 at 30:1-3; Bernice Lebowitz Depo., ECF No. 19-2 at 8:15-20; Michael Palmer Depo., ECF No. 19-2 at 6:9-10.) Instead, plaintiff argues that since the spill was approximately twelve inches by twelve inches and located in the entry of the checkout lane, Ms. Lebowitz should have been aware of the hazard. (ECF No. 20-1 at 5.) As noted in Saunders, evidence regarding the size or nature of the spill's location is an insufficient substitute for evidence regarding the length of time the hazard was present. Even considering the facts in the light most favorable to plaintiff, (i.e., that the puddle existed for thirty seconds), the hazard affected a small area for a very short amount of time, giving defendant little opportunity to discover the condition even with the exercise of due

7

diligence.  Plaintiff has not offered adequate evidence, or inferences that could reasonably be drawn therefrom, to show that specific, material facts exist to create a genuine, triable issue regarding defendant's constructive notice of the hazard.  Accordingly, defendant's Motion for Summary Judgment is granted.

**III.        Plaintiff's Sanction Motion**

        **A.  Spoliation Sanction Standard**

Plaintiff seeks the spoliation sanction of a negative inference jury instruction based on defendant's failure to preserve the CCTV tape that recorded plaintiff's fall.  (ECF No. 21 at ¶ 5.) Spoliation is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 505 (D. Md. 2009) (internal citation omitted).  The court has two sources of authority to impose sanctions upon a party for the spoliation of evidence: (1) the "court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct which abuses the judicial process," and (2) when "spoliation violates a specific court order or disrupts the court's discovery plan."  Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 517 (D. Md. 2010) (internal citation and quotation marks omitted).  The party seeking sanctions must prove that

> (1) [t]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence.

Id. at 520-521 (internal citation and quotation marks omitted).

        **B.  Defendant lacked a duty to preserve the CCTV recording**

Plaintiff argues that defendant had a duty to preserve the CCTV recording because defendant's internal policy required preservation of such evidence and defendant should have reasonably anticipated litigation after plaintiff's wife telephoned the store about plaintiff's hospitalization the day following the incident. (ECF No. 21-1 at 3.) Defendant argues that it had no duty to preserve the tape because it had no reason to anticipate litigation. (ECF No. 22-1 at 5-6.)

To support a motion for spoliation sanctions, the moving party must demonstrate that the party in control of the evidence had a preservation obligation. Victor Stanley, Inc., 269 F.R.D. at 520. "Absent some countervailing factor, there is no general duty to preserve documents, things, or information, whether electronically stored or otherwise." Id. at 521. Even the "existence of a dispute does not necessarily mean that parties should reasonably anticipate litigation or that the duty to preserve arises." Goodman, 632 F. Supp. 2d at 510; see Turner v. United States, 736 F.3d 274, 282 (4th Cir. 2013) (finding that, in the absence of any correspondence threatening litigation, defendant Coast Guard who conducted search and rescue mission did not have a duty to preserve recordings of telephone calls despite death of missing boater.) Instead, the duty to preserve evidence arises during "that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001). "The determination of when a party anticipated litigation is necessarily a fact intensive inquiry, and a precise definition of when a party anticipates litigation is elusive." Samsung Elecs. Co., Ltd. v. Rambus, Inc., 439 F. Supp. 2d 524, 542 (E.D. Va. 2006), vacated on other grounds, 523 F.3d 1374 (Fed. Cir. 2008). The court should first evaluate the duty to preserve evidence using a reasonableness standard on a case-by-case basis, examining "whether what was done--or not done--was proportional to that case and consistent with clearly

9

established applicable standards." Victor Stanley, Inc., 269 F.R.D. at 522 (internal citation omitted). Accordingly, "the scope of preservation should somehow be proportional to the amount in controversy and the costs and burdens of preservation." Id.

On the date of the incident, defendant lacked a general duty to preserve the evidence because there was no indication that plaintiff's fall would result in litigation. Indeed, plaintiff denied any medical assistance and left the store, driving himself home. (Pl.'s Depo, ECF No. 19-2 at 33:1-3; 34:17-18.) Although plaintiff's wife called defendant the day after the accident to advise that plaintiff received medical treatment (Affid. of Brenda Shlian, ECF No. 20-3 at ¶ 7), there was no specific indication that litigation would result so as to trigger defendant's duty to preserve the tape. See Goodman, 632 F. Supp. 2d at 510 (finding "mere existence of a dispute" insufficient to trigger the duty to preserve evidence.) Based on the record before the court, defendant's earliest notification of potential litigation occurred on August 3, 2012, almost two months after the accident, when plaintiff's counsel sent a letter to defendant's insurer. (ECF No. 22-1 at 2 n.1.) By the time this contact occurred, defendant's CCTV system, in accordance with defendant's routine business practice, had already taped over the recording for the date in question. (ECF No. 22-1 at 2.) Given that defendant did not have a duty to preserve the tape until plaintiff's counsel contacted defendant on August 3, 2012, and that the tape no longer existed at that time, plaintiff cannot support a claim for spoliation sanctions.

### C. **Defendant lacked the requisite mental state**

Even if plaintiff could establish that defendant had a duty to preserve the tape, there is no evidence that the defendant had the requisite mental state to support sanctions. Plaintiff argues that defendant willfully failed to preserve the CCTV tape when Mr. Palmer allowed the incident footage to be lost or destroyed. (ECF No. 21-1 at 3-4.) Defendant argues that it lacked the

requisite state of mind to warrant sanctions because the incident footage was taped over in the normal course of business. (ECF No. 22-1 at 6-8.) In order to warrant sanctions, the party destroying evidence must have done so with a "culpable state of mind," exhibited by "bad faith/knowing destruction[,] gross negligence, [or] ordinary negligence." Thompson v. U.S. Dep't of Hous. & Urban Dev., 219 F.R.D. 93, 101 (D. Md. 2003) (internal citation omitted). Although some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions. Silvestri, 271 F.3d at 590. The court must consider a party's state of mind when determining which, if any, sanction is appropriate. Victor Stanley, Inc., 269 F.R.D. at 529. An adverse inference, the sanction plaintiff seeks, "cannot be drawn merely from [a party's] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that [the party's] willful conduct resulted in its loss or destruction." Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995).

There is no evidence here that defendant knew the tape was relevant to some issue at trial or that defendant had the requisite mental state to support the sanction of an adverse inference. As noted above, Assistant Store Director Palmer had no reason to be aware that the evidence may be relevant at trial because there was no present threat of litigation when the recording was taped over in the ordinary course of business. Although Mr. Palmer failed to include the video with the incident report in what may have been a technical violation of store policy,[3] the fact that he permitted the video to be erased in the ordinary course of business does not constitute any type of willful or negligent destructive conduct. Accordingly, a spoliation sanction is not warranted.

---

[3] Defendant's Customer/Vendor Incident Worksheet contains instructions that include "Mail this worksheet along with photos, videos, estimates, etc…directly to the appropriate Regional Claim Office." Ex. 4, ECF No. 21-2.

## D. An adverse inference cannot defeat a motion for summary judgment

The court also rejects plaintiff's suggestion that an adverse inference instruction can be relied upon to defeat defendant's Summary Judgment Motion. (ECF No. 20-1 at 6.) An adverse inference is insufficient, however, to replace evidentiary proof necessary to support a claim. "Unexplained and intentional destruction of evidence by a litigant gives rise to an inference that the evidence would have been unfavorable to his cause, but would not in itself amount to substantive proof of a fact essential to his opponent's cause." Anderson v. Litzenberg, 115 Md. App. 549, 560 (Md. Ct. Spec. App. 1997). While this inference can assist plaintiff's case, the "presumption that arises from [defendant's] spoilation (sic) of evidence cannot be used by [plaintiff] as a surrogate for presenting evidence of [defendant's] negligence in [plaintiff's] prima facie case." Id. at 563. Accordingly, even if the undersigned were to find that an adverse inference instruction was appropriate as a spoliation sanction, such an inference does not constitute the evidence necessary to defeat defendant's Summary Judgment Motion.

## IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED and plaintiff's Motion for Spoliation Sanction (ECF No. 21) is DENIED. A separate order will be issued.

/s/
Beth P. Gesner
United States Magistrate Judge